**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1751
_____

SECURITIES AND EXCHANGE COMMISSION

v.

GEORGE GEORGIOU,
Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:09-cv-00616 )
District Judge:  Honorable Michael M. Baylson

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 8, 2026
Before:  BIBAS, CHUNG, and BOVE, *Circuit Judges*

(Opinion filed: May 14, 2026)
_____

OPINION[*]
_____

PER CURIAM

George Georgiou appeals pro se from the District Court's summary judgment in

favor of the Securities and Exchange Commission (SEC) on its claims that Georgiou

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

committed securities fraud.  We will affirm.

From 2004 through 2008, Georgiou and his co-conspirators engaged in a stock fraud scheme resulting in more than $55 million in actual losses.  In February 2009, the SEC brought this civil enforcement action against Georgiou alleging that his fraudulent trading practices and market manipulation violated Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b); and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

Concurrent with the SEC's case, the Department of Justice (DOJ) filed criminal charges against Georgiou based on the same fraudulent scheme to manipulate the market for the same securities.  The civil action was stayed pending completion of the criminal trial.  In February 2010, a jury found Georgiou guilty on all charges, including two of the same violations of the Exchange Act at issue here—securities fraud under Section 10(b) and Rule 10b-5.  Georgiou was sentenced to 300 months' imprisonment and ordered to pay over $55 million in restitution.[1]  The District Court also granted the Government's motion for a $26 million forfeiture judgment.  This Court affirmed the conviction and sentence on direct appeal, *see United States v. Georgiou*, 777 F.3d 125 (3d Cir. 2015), and the Supreme Court denied certiorari, *see Georgiou v. United States*, 577 U.S. 954 (2015).  Georgiou has filed a "staggering number" of unsuccessful post-judgment motions.  Dist. Ct. Mem. 2, ECF No. 59.

---

[1] At sentencing, the District Judge commented that "[Georgiou] obstructed justice by perjuring himself in this court.  The evidence in this case was overwhelming.  [Georgiou] sat there and listened to it, and yet he took the witness stand and gave evidence that really left the court stunned."  Mem. 2 n.1, ECF No. 59.

In January 2023, the District Court transferred the civil case back to the active docket and granted summary judgment for the SEC, holding that Georgiou's civil liability for federal securities fraud was established as a matter of collateral estoppel by his criminal convictions for the same conduct. The District Court also awarded disgorgement and prejudgment interest, but it deemed those obligations satisfied by the restitution order in his criminal case. Georgiou appealed.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment, *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014), and application of issue preclusion, *Jean Alexander Cosms., Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 248 (3d Cir. 2006). We review the District Court's disgorgement award for abuse of discretion. *CFTC v. Am. Metals Exch. Corp.*, 991 F.2d 71, 76 (3d Cir. 1993).

We see no error in the District Court's determination that Georgiou's criminal convictions worked an estoppel in favor of the SEC. A criminal conviction collaterally estops a defendant from relitigating in a subsequent civil action issues that were resolved in the criminal proceeding if "(1) the issue sought to be precluded is the same as that involved in the prior action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; and (4) the determination was essential to the prior judgment." *Anderson v. Comm'r of Internal Revenue*, 698 F.3d 160, 167 (3d Cir. 2012) (quotation marks and alterations omitted).

Those elements are satisfied here. First, both cases involved the exact same conduct and series of events. In the criminal case, the jury found Georgiou guilty of

3

violating Section 10(b) of the Exchange Act and Rule 10b-5.  In this case, the SEC claimed that he was liable for violating these same securities laws, and those provisions require proof of the same elements regardless of whether they are invoked in a criminal or civil case.  The SEC also claimed that Georgiou was liable for violating Section 17(a) of the Securities Act, which requires proof of the same elements as Section 10(b), except that claims under Section 17(a) may be premised on offers of securities as well as completed sales.  *See* 15 U.S.C. § 77q(a).  Because the buying and selling of securities was what was at issue in the criminal trial, the jury's guilty verdict on Section 10(b) established the elements of Section 17(a).  *Cf. Sec. & Exch. Comm'n v. Stein*, 906 F.3d 823, 830 (9th Cir. 2018) (concluding that appellant's conviction for securities fraud under 18 U.S.C. § 1348 established his liability under Section 17(a) because both claims "require proof of the same elements except that Section 17(a) prohibits fraud in the offer or sale of any securities, which was what was at stake in the criminal trial" (quotation marks omitted)).  And the remaining three elements of collateral estoppel were also satisfied: Georgiou's liability under the securities laws was actually litigated and determined by a final judgment, and the determination was essential to the criminal judgment.

On appeal, Georgiou argues that the District Court erred in giving his criminal convictions preclusive effect because he is still pursuing collateral challenges to the convictions.  But "a judgment's preclusive effect is generally immediate, notwithstanding any appeal." *Coleman v. Tollefson*, 575 U.S. 532, 539 (2015).  Relatedly, Georgiou argues that his criminal convictions cannot work an estoppel because "the record [in his

4

criminal case] is rife with unresolved factual disputes." Br. 34, ECF No. 63. He asserts, for example, that his convictions are "infected by unresolved judicial bias," Br. 26; that an SEC analyst presented false trading charts at trial; that a government informant committed perjury; and that he has obtained new evidence that undermines his convictions. But Georgiou's challenges to his criminal proceedings do not create factual disputes here; when collateral estoppel applies, no further litigation on the issue is allowed. *See United States v. Rigas*, 605 F.3d 194, 217 (3d Cir. 2010) (en banc).

Georgiou also contends that the District Court committed a number of procedural errors in the proceedings below. He asserts that the District Court returned the case to the active docket without notifying him; that he was not given an opportunity to contest the SEC's claims before summary judgment; that the District Court held an ex parte teleconference; and that the District Court delayed the proceedings. Georgiou does not, however, explain how these alleged errors affected the District Court's determination that his criminal convictions collaterally estopped him from relitigating those issues in this civil action.[2] Therefore, any error was harmless. *See Delgado-Sobalvarro v. Att'y Gen.*,

---

[2] With respect to Georgiou's contention that the ex parte telephone conference was "a dispositive hearing which rendered the judgment," Br. 20, we have reviewed the transcript, ECF No. 63, and agree with the District Court that "[n]o rulings were made of any kind nor did anything else occur that was prejudicial to [him], Order 1, ECF No. 68. *See United States v. Skulsky,* 786 F.2d 558, 561 (3d Cir. 1986) (affirming the denial of evidentiary hearing on issue of ex parte communications because the record clearly indicated that the ex parte communication concerned "the procedural question of [the appropriate] forum" and, thus, could not have been prejudicial to the defendants); *In re Sch. Asbestos Litig.*, 977 F.2d 764, 789 (3d Cir. 1992) ("[Ex parte communications] are tolerated of necessity, however, where related to non-merits issues, for administrative matters, and in emergency circumstances.").

625 F.3d 782, 787 (3d Cir. 2010) ("To establish a violation of due process, the petitioner[] must show that substantial prejudice resulted from the alleged procedural errors.").

Finally, the District Court acted within its discretion in finding that Georgiou was liable for disgorgement of $21,079,074, representing the net profits gained through his violations of the securities laws. The Exchange Act authorizes district courts to grant "equitable relief that may be appropriate or necessary for the benefit of investors." 15 U.S.C. § 78u(d)(5); *see also id.* § 78u(d)(7) (authorizing a district court to award disgorgement in actions brought by the SEC). "[A] disgorgement award that does not exceed a wrongdoer's net profits and is awarded for victims is equitable relief permissible under § 78u(d)(5)." *Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71, 75 (2020). Although Georgiou contends that the SEC did not meet its burden of demonstrating that this figure represents his ill-gotten gains, we have already rejected this argument and concluded that $26 million "constitutes[] or is derived from proceeds traceable to the offenses of which [Georgiou] was convicted." *Georgiou*, 777 F.3d 146–47 (internal quotation omitted); *see also United States v. Georgiou*, 800 F. App'x 136, 139 (3d Cir. 2020) (not precedential) (rejecting Georgiou's challenge to the forfeiture order based on proceeds he never obtained because "there is ample evidence in the record that Georgiou obtained millions in proceeds from the scheme").

We have considered Georgiou's remaining arguments on appeal and conclude that they are meritless. Accordingly, we will affirm.